authority. May it please the court. My name is Locksley Wade and I represent Ms. Violet Valerie Montgomery. Ms. Montgomery is a 25-year employee of the Transit Authority. Ms. Montgomery is a 25-year employee of the Transit Authority. She has a degree in civil engineering. She has a master's degree in management. She's an exemplary employee. She applied for a position, a supervisory position, but she was passed over. Instead, a gentleman with a high school diploma was deemed more qualified than Ms. Montgomery. Ms. Montgomery was not satisfied with what happened, so she filed a complaint, an internal complaint. Then there was a second round of interviews. Again, she was denied the opportunity for promotion. And instead, that same high school graduate was deemed more superior. But Ms. Montgomery is not here about whether or not the Transit Authority deemed her as being less qualified or the other person being more qualified. It's about whether she had a fair opportunity to present her skills. So with that, she did file a lawsuit with the Equal Employment Opportunity Commission. The gentleman who was chosen, all the panelists ranked him as the top choice, right? Is there any suggestion that racism creeped into the rankings of the candidates? Yes, Your Honor. During discovery, we looked at how they ranked the candidates. We looked at the notations. There was a note. They wrote the word loud. It was circled several times as if to add emphasis to the word. Well, they wrote, only one of them wrote that, right? We don't know. It appears that the word loud appeared twice in two of the evaluators' sheets. It appeared twice in 2012 and then again in 2014. So it was the same evaluator. So they used the same criteria. They circled it and said loud. But it was one person, then. Same evaluator said it twice? No, there were two evaluators. Altogether, there were three evaluators. Two of the evaluators wrote the word loud. We believe that's to be a code word. But as we went through discovery, and then defendants filed a motion for summary judgment. Of course, we opposed the motion for summary judgment. But before we got to that, the defendants said, hey, there's some records. We never gave it to you. So we looked at the records. What we're saying is those records, it was like a three-legged stool. The defendants relied on an investigation. They said they examined everything. But yet we have some documents that they never saw. This is the first time that they're seeing it. So that undermines everything that they said in front of the Equal Employment Opportunity Commission and what they said. Were those additional documents meaningful in any way? They would be meaningful to me. Because as I pointed out to the court below, my thinking, my litigation strategy might have changed. I would have formulated other questions to the deponents. I would have formulated other questions to transit authority. I would have questioned whether or not that investigation that they did, where they said they found no discrimination. Those notes were from the earlier panel? Is that right? It was from the panel of 2014, the last panel. I would have questioned whether or not that report was actually done, or whether it was just something that was slapped together to justify what they did. The court below said, no, we didn't, he didn't look at it. But the question is not whether the judge looked at it and whether or not it helped inform an opinion. It was how did it prejudice Ms. Montgomery in going forward with her claim. May I just probe that a little bit? I understood the judge be saying that, therefore, he didn't rely on their explanation as put in those. He didn't give them the benefit of any of that material. Am I missing something? Yes. He said it would not make any difference. He did not review it. So in other words, it would not help us. No, no, I'm sorry, that it wouldn't have helped them as an explanation for their non-hiring decision. No, the judge did not clearly articulate the reason for that. He just simply said he did not review the notes. He did not review the discovery. Okay. But nonetheless, I reviewed it. What evidence is there that race was a factor other than the word loud? Was there any other evidence of race as a motivating factor? Well, we looked at the other candidates. We looked at Ms. Montgomery. And what we determined is that we believe that sexism, racism, the word. I understand you believe that. What I'm asking you is does the record contain any other evidence that race or gender was a motivating factor? No, the record only contains the word loud. And that leads me to another part of my argument, how the judge interpreted that word. He looked at it as a one-off word. It meant nothing. But the Court below did not look at the context, how it was used. The word loud is nothing new in the English language. It's something that's been around for 2,000 years or maybe about 1,000 years. If you even go to the Bible, the Book of Proverbs, it talks about a loud woman. And that's something that's been used often as a code word. Ms. Montgomery submitted an affidavit. She knows what it means. It's been used often. Well, I mean, here it was used positively, right? It said she was enthusiastic-loud-thunderous, right? No, Your Honor. It's not what it said? I've mischaracterized it? That's the argument of opposing counsel. That was not really what was said. Well, what's in the notes? I'm sorry? What is in the notes? It has the word loud. And I asked the opponents, what does that mean to you? And their excuse is that, yes, it meant she was physically loud. And I said, well, it was used twice, two people, two different times. It has to mean something. And we believe that's a code word. Well, can loud ever just mean loud? Yes, it can. Okay. I mean, it's not like there were dozens of people who applied for this job. Only a handful got interviewed. And she finished third or fourth, depending on which of the panelists you asked. So she certainly did well. She just didn't come in first, right? That's correct. However, what we're claiming is that there was more to it. The word loud in and of itself may actually mean just physically loud, but when you have to look at context, there was no analysis below, as in Ash versus Tyson Food, as to look at the context, usage, the inflection. And we believe that should have been a jury question, not for the judge to make that decision as to what the word actually means. So any time an adjective is used, it's a jury question as to whether the adjective means something other than the dictionary definition of that word? Not necessarily. I think the court should look at the context in which it is used. It's sort of like even in Ash when they used the word boy. That was a case that was in the 11th Circuit. They used the word boy. The court below said no. And the appellate court said you must use boy with a modifier. The Supreme Court said no. What you need to do is look at context, how it's used, not just whether or not there was a modifier to that particular word, but what's the common usage in that area. All right. Thank you. You have three minutes for rebuttal. We'll hear from the other side. May it please the Court, Stephen Gerber, Shuman, Updike, Kauffman and Gerber for the appellate New York City Transit Authority. I'd like to try and address some items that were raised during colloquy with plaintiffs' counsel. First of all, on the issue of credentials, the job posting makes it clear certain degrees were preferred or education and experience. Mr. Gorbetsian fell into the latter category. The plaintiff did not fall into the former category. Her degree was in civil engineering, not one of the majors specified. There's no question, however, she was qualified. I do want to go directly to the issue about the purported additional documents. In that regard, and I admit that I stepped into this case because my partners had availability as a plaintiff, I was struck by one thing in the record. With all the complaining about late-produced documents and how they would change the outcome, those documents were never put before the district court by plaintiffs' counsel. You don't have them in your record on appeal because they weren't there. But I understand his argument to be that they would have affected his questioning of the witnesses, not that he would have put the documents into evidence. So what's the response to that? The response to that is if you're trying to convince a district court judge that they would somehow meaningfully change the course of litigation and impair your ability to respond to summary judgment, you think one would want the district court judge to see those very notes. It's hard to argue that he abused his discretion. Right. And well, abuse that you ---- Not reopening discovery or ---- That's correct. And it is an abuse of discretion issue, obviously, if it's a discovery sanction or a discovery ruling. But I find it entirely remarkable that they're not put in front of the court. If they were relying on them to say, judge, here's my letter motion to extend briefing, that's docket index 28 below. It is not in the record. It was not put in the record. The only thing that's in the record was my partner's transmittal letter to plaintiff's counsel the day after we received the notes sending him those documents. I believe it is July 11th. That was Exhibit 31 to the Kauffman reply declaration. I would like to also quickly address the fact that the code word. Loud is not a code word. It's not a code word for racial ---- Doesn't it depend on the circumstances? Yes, it depends. In some circumstances, it can be a code word? Virtually anything in the appropriate context, of course, can be a code word. Large, large could be. On a summary judgment, the argument here is that in this context, a reasonable jury could conclude that it was a code word. And why do you say that's not so? It's not so because of the context of its use. And, by the way, it was one person, Mr. Moakler, in 2012 and in 14 who used the word loud, not two different people. I think the record appendix shows that. It is because he was referring to it as a positive attribute in a category in which he ranked the plaintiff highly. So in that context, and his explanation was thunderous, commanding, that is not a code word. In this context, it would not be. In the same way that quiet would not be a code word in the case of a person of Asian origin, or abrasive or angry in the Threwell case, or very authoritative and critical, or in a gender discrimination case, in Weinstock v. Columbia, a lead case out of this Court, nice and nurturing with respect to a woman who was denied promotion and tenure and sued on the basis of gender discrimination, or aggressive. If the code word was used in a positive or an innocent manner, that weighs against it being evidence of discrimination. But even if, even if, and even if, plaintiff's case still should have been dismissed on summary judgment. Why? There's no question that the employer has the authority to make a choice among candidates, indeed choosing among equally qualified candidates. The allegation or conclusory belief of the plaintiff being put aside, I think that the key cases that we would ask the Court to consider are Burney, a decision of this Court in 2001, and Moy, which was a summary order on which Judge Radji said. And basically, that's what follows. And I'll just quote. I think it sums it all up. To feed a summary judgment motion, I'm summarizing, on the basis of a discrepancy in qualifications, that discrepancy must bear the entire burden of showing a reasonable trier fact, not only that the ER, that the employer's explanation was pretextual, but that it also served to mass discrimination. Putting loud into that constellation in this context does not meet that burden. And that is, I think, a central reason why the decision below should be affirmed. I would also add that the district court very carefully summarized the material facts below. I don't need to address those facts. They were summarized in a light most favorable to plaintiff, giving all reasonable inferences from facts established to the plaintiff. The facts are, she was interviewed and selected from a group of almost 50 people on two different occasions. She was found to be expressly qualified. Other people were also found to be qualified. She was not ranked as number one. She was not ranked as number one in the 2012 event or interview, which I submit is up no moment now. And she was not ranked as second or first on any of the raters in the 2014 evaluation. And that rating panel in both circumstances was diverse. And the note person, Mr. Henry, who was on the 2012 panel, the late Purdue's note person, was not on the 2014 panel. And Mr. Henry, an African-American male, was replaced by who on the 2014 panel? An African-American female, who also rated Mr. Gorbetsy a number one and did not rate the plaintiff, although finding her qualified, as shown in her e-mail memos, did not even find her ranked number two. That doesn't mean that plaintiff's not a good employee. The reasons why they chose Mr. Gorbetsy and included he was an ideal candidate. He was already managing 80 employees in Brooklyn with the automated fare collection system. He was already familiar with it. He had demonstrated in both sets of interviews an ability to respond correctly to posed issues that he would have to confront. Others on the panel, besides Mr. Moakler, the person who wrote loud thunderous as a positive, also made comments that make it clear that they thought that while Ms. Montgomery is a very valued employee and very bright person and well qualified for what she's doing, that she seemed to be better qualified at managing data rather than managing people. That sort of a decision by the employer is not one which a court should allow a jury to act as a super-personnel agency about, nor should this Court. Finally, the code word cases are telling because if you read through those cases, the context of them shows the bottom line. And the if loud was used as a negative, it appears that she was loud. I'm not suggesting it was used as a negative. And it could well be an apt description of her means of communication during the interviews, which is not discriminatory. With all due respect, my wife says that I'm maybe I would be speaking too loudly. Could somebody comment on that? Yes. Does that comment relate to anything about protective characteristics? No. So for all the reasons, I believe the District Court got this one right, laid it out correctly, relied upon the correct appellate law, cited to numerous District Court cases that supported the Court's decision, and concluded that on the third step of McDonnell Douglas, the plaintiff had not shown that she had superior qualifications to the candidate selected. Thank you, Your Honors. Thank you. We'll hear the rebuttal. A few things. Ms. Montgomery can manage people. In fact, she's actually an ordained minister. So she does offer counseling. The record will contain information, the fact that she is an ordained minister. But we're not here to say that transit did not make a good decision, all things being equal, if all things were equal. Management does reserve the right to make stupid decisions. But what we're saying is she didn't get a fair shot at being interviewed. It's interesting, though, in the briefs below the Transit Authority, they said perhaps it was favoritism. Favoritism is not discrimination. But when you look at the history of that particular position, who normally gets that position? It's never a woman. It is never a person of color. Ms. Montgomery came the closest. Was there a woman that you heard about who had held that position in the past? No. That's not as far as race or the demographics, that was never part of the discussion below, except that it might be within the transcript, but it was never really an issue that we put forward. But the fact is the question really is, on this record, even assuming a jury were to construe loud in some negative way that it had some negative consequences, connotation, could a reasonable jury find that race or gender was a motivating factor? And really all you've identified is the word loud and nothing else. But I believe that should be a jury question. And with respect to whether the documents that were provided later on, I don't believe a judge would sit there and go through discovery and make a decision as to what is credible evidence and what is going to be useful. And what is going to be admissible. I think at that stage, the judge would say, did Ms. Montgomery get a fair chance with the missing discovery to attack the defendant's profit reason for her not getting the position? With that, I have nothing further, Your Honor.